Smith v. Jukes.

---

No. 24,121.

OTTO SMITH, *Appellant*, v. C. L. JUKES et al., *Appellees*.

SYLLABUS BY THE COURT.

1. JUSTICE OF PEACE—*Default Judgment—Voidable Judgment*. Where jurisdiction of a justice of the peace has attached, the premature entry of a default judgment by him is voidable only and not void.

2. SAME—*Interplea—Asking Affirmative Relief—General Appearance*. When an interpleader in an action before a justice of the peace asks for affirmative relief he thereby enters a general appearance, regardless of the disposition of his interplea.

3. SAME—*Judgment Without Formal Pleadings*. When an interpleader is before the court of a justice of the peace under a general appearance, a judgment may properly be entered against him on a liability which he then and there admitted, although no formal pleadings seeking such judgment were on file at the time he presented his interplea.

4. SAME—*Not Liable Because of Erroneous Judgment*. Rule followed that where a justice of the peace is acting within the scope of his jurisdiction, he is not liable on his official bond therefor, no matter how erroneous his judicial acts may be.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed January 6, 1923. Affirmed.

*Claud J. Bryant,* and *Benjamin W. Berg,* both of Independence, for the appellant.

*W: R. Hobbs, W. N. Banks, O. L. O'Brien,* and *W. L. McVey,* all of Independence, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action on the bond of a justice of the peace and his sureties.

The circumstances were these: One W. B. Wilson filed his bill of particulars before C. J. Jukes, a justice of the peace, against one J. A. Jackson, and an attachment was issued on certain goods of Jackson in the possession of Otto Smith and wife. About the same time one W. C. Goodell filed his bill of particulars before the same justice against the same Jackson, and a similar attachment was issued on the goods of Jackson in possession of Smith and wife. The attached goods were the food supplies of a restaurant, and when the sheriff, as special constable, served the attachments, he made an arrangement with Smith's wife whereby she was to use the perishable foods and replace them when, and if, they would have to be forthcoming pursuant to the attachments. Jackson could not be found in the county and was served by publication, and although the actions of Wilson and Goodell were set for hearing on July 3, yet default judgments were entered against Jackson on July 1, and the attachments were sustained and the attached property ordered sold. On July 24, Otto Smith filed interpleas in the Wilson and Goodell cases, alleging that the attached goods were part of the assets of a restaurant which he had sold to Jackson and that Jackson had surrendered them to him on April 23, and that there was a balance of $180 due him thereon and that his possession gave him a prior lien over the attachments, and he prayed "that the attachments herein be dissolved and that this interpleader's claim for prior lien thereto be upheld and be declared to be a first and prior lien thereon." Wilson's and Goodell's demurrers to these interpleas were sustained by the justice. The defendant, however, in open court said he was ready to comply with the agreement between his wife and the special constable, and would pay for the goods. Thereupon Wilson and Goodell asked and obtained leave to file answers to the interpleas, denying the allegations

of Smith's prior right and asking judgment for the value of the goods used by Smith and wife. While these answers were being prepared, Smith, on the suggestion of his lawyer, withdrew from the court. One witness testified:

"At a hearing Mr. Smith was willing to pay for the goods, but Mr. Bryant, his attorney, was not. At the time permission was asked to file the answer and interpleas Mr. Bryant and Mr. Smith were present."

Another witness testified:

"Mr. Smith said that he had used the goods and that he was willing to do whatever was right. About that time his lawyer took him by the coat tail, I guess, at least he shut up."

The sheriff testified:

"The day before the sale, I went to Mr. Smith, and I said: 'Tomorrow is the day we have the sale.' He said: 'Well, I have already used the stuff, I will just come up tomorrow and pay you for it.'

"At the trial Mr. Smith said that he was still ready to carry out his agreement, and his attorney spoke up and said they would do nothing of the kind."

Judgments aggregating $292.94 and costs were entered in behalf of Wilson and Goodell against Otto Smith, and thereafter this sum was collected by garnishment proceedings on funds of Smith in a Coffeyville bank. While the garnishment proceedings were pending, Smith filed a motion to dismiss on the ground that the Wilson and Goodell judgments against him were void—because the judgments against Jackson had been prematurely entered on July 1 when the causes had been set for July 3, and because no bills of particulars had been filed against him (Smith) and no summons had been served on him, and because the court's rulings sustaining the demurrers to his interpleas had terminated the cases so far as concerned Smith.

No appeals were taken from any of the proceedings had before the justice of the peace. On the contrary, this action in the district court on the justice's bond was begun to recover the money paid into the justice court by the Coffeyville bank under the garnishment proceedings. All the antecedent matters narrated above were pleaded or developed by the evidence. The trial court gave judgment for plaintiff for $55.23, which was found to be the excess in the hands of the justice over the amount of the judgments against plaintiff in favor of Wilson and Goodell.

Plaintiff appeals. He first argues that the judgments in favor of Wilson and Goodell against Jackson were void because they

were entered on July 1 when the causes had been set for July 3. But where jurisdiction has once attached, as it had in these cases, the premature entering of the judgments only rendered them irregular and voidable, but not void. (*Mitchell v. Aten,* 37 Kan. 33, 35, 14 Pac. 497.)

Plaintiff further contends that the justice had no jurisdiction to render any judgment against him except for costs. Without conceding that this contention might be correct in some situations, it is to be noted that in his interpleas he prayed for affirmative relief against Wilson and Goodell. The effect of that was a general appearance (*Meador v. Manlove,* 97, Kan. 706, 710, 156, Pac. 731; *Mfg. Co. v. Hayes,* 97 Kan. 740, 742, 156 Pac. 735; *Makemson v. Edwards,* 101 Kan. 269, 166 Pac. 508) and therefore no summons to bring plaintiff into court was necessary. Nor did the hasty withdrawal of plaintiff and his counsel from the court room before answers by Wilson and Goodell to his interpleas were reduced to writing avail to defeat the jurisdiction. In a justice's court written pleadings are not necessary (*Blair v. McQuary,* 100 Kan. 206, 162 Pac. 1173), and judgment might properly have been entered against plaintiff on his own admission of his liability. Moreover, the order of the justice granting leave to Wilson and Goodell to file answers to plaintiff's interpleas was in effect a setting aside of his ruling on their demurrers, and this left the matter open for whatever judgments justice might require. The demurrers were probably erroneously sustained in the first place, for it would seem that plaintiff's interpleas were perfectly good against demurrers, and the plaintiff had a right to appeal therefrom. So, too, might the plaintiff have appealed from the ruling on the motion to quash the garnishment summons and the subsequent proceedings therein.

From the foregoing it is clear that whatever questionable orders and judgments the justice may have made, he had full jurisdiction of the parties and of the subject matter, and it is fundamental in all such cases that for errors in judgment a justice of the peace, as a judicial officer, is not liable. In *Clark v. Spicer,* 6 Kan. 440, 446, this court said:

"It is a general principle of law that whenever a judicial officer acts within the scope of his jurisdiction, he is not liable, however erroneous his acts may be. 1 Chit. Pl. 78, and the numerous cases there cited. Any other rule would be attended with the most disastrous consequences. 'Whenever we subject the established courts of the land to the degredation of private prosecution,

Brewer v. Telegraph Cable Co.

we subdue their independence and destroy their authority. Instead of being venerable before the public, they become contemptible; and we thereby embolden the licentious to trample upon everything sacred in society, and to overturn those institutions which have hitherto been deemed the best guardians of civil liberty'—Kent, C. J., in *Gates v. Lansing,* 5 Johns, 298. And who would accept a judicial office were he liable to be arraigned for every error of judgment, and his property wasted in litigation, with every man whom his decisions might offend?"

The judgment is affirmed.